IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MERY VIVIANA CHIMBO VIRACUCHA,<br><br>Petitioner,<br><br>vs.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security, et al.,<br><br>Respondents. | 0:26-CV-831<br><br>MEMORANDUM AND OPINION |

    This matter is before the Court on the petitioner's request for the return of personal effects taken from her when she was unlawfully detained, but not returned. Filing 10. The government has responded that "Agency personnel have made repeated, diligent efforts to locate the property and will continue to do so. If and when the property is found, the agency will promptly communicate that fact and arrange for its return." Filing 12.

    The Court has no reason to doubt the good faith of the government's counsel in making that representation—but respectfully, it's not good enough. The Court will put the force of law behind the petitioner's request, and order the government to return her property.

    The Court notes that the government hasn't resisted its inquiry into the disposition of the petitioner's property. And rightly so. There is, admittedly, some authority suggesting that a habeas petition is the wrong vehicle for addressing private property rights. *See Ameziane v. Obama*, 58 F. Supp. 3d 99, 101-02 (D.D.C. 2014). But those cases generally involve either convicted prisoners, collaterally attacking their judgments of conviction or pursuing what are better characterized as civil rights claims, and aggrieved petitioners who were either never in custody or who weren't released by a writ. *See id.*

(collecting cases). Those circumstances do not speak to the Court's power to compel the return of property upon issuing a writ of habeas corpus ordering the release of an unlawfully detained prisoner, especially outside the context of a collateral attack on a judgment of conviction.

But the Court finds such power in the essential nature of the writ, which is "the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). The federal habeas corpus statute requires a petitioner to be in custody when the petition is filed, but doesn't limit the relief that may be granted to discharge from physical custody—rather, its mandate is broad, providing that the Court shall "dispose of the matter as law and justice require." *Id*. at 239 (citing 28 U.S.C. § 2243). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Id*. at 238. "A federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, and has the authority to see that its judgment is *fully* effectuated." *Davis v. Garland*, 708 F. Supp. 3d 283, 291 (W.D.N.Y. 2023) (cleaned up) (emphasis supplied). "Further, the purpose of habeas remedies is to put the defendant back in the position he would have been in" had he not been detained unlawfully. *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013).

And that makes sense—it would wholly frustrate "the integrity of the writ [and] the rights of the person detained," *see Rumsfeld v. Padilla*, 542 U.S. 426, 453 (2004) (Kennedy, J., concurring), if the Court's ability to remedy unlawful detention could be limited by the malicious compliance of a creative custodian. The government couldn't comply with a writ by, for instance, transporting a prisoner to NSF McMurdo Station, Antarctica, and telling them to find their own way home. Nor could the government comply with the writ by releasing a prisoner in an unsafe area with no way to call for help, or stark naked in the town square at high noon.

The present circumstances are obviously not that egregious, but it is a difference of degree, not kind. It's implicit in the nature of the writ that the Court's power to order release of a prisoner includes the power to address the circumstances of that release, and ensure that "release" means restoring the petitioner to something approximating the condition they were in when they were unlawfully detained.

In this case, the government hasn't just deprived the petitioner of the technology upon which people depend to navigate the modern world—it's also deprived her of the financial instruments she needs to survive, and the identifying documents that could (or at least should) prevent her from being unlawfully detained again. That's not acceptable. The Court will *order* the government to return the petitioner's property. If it doesn't, the petitioner can ask the Court to hold the government in contempt, and the Court will order a hearing to discuss the remedies available for the government's noncompliance.

IT IS ORDERED:

1. On or before **February 18, 2026**, the government shall return to the petitioner all of the personal property seized from her when she was detained.

2. If the petitioner's property hasn't been returned to her after that date, the petitioner may file a motion to hold the government in contempt, and a hearing will be scheduled.

Dated this 11th day of February, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge